IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

JOANNE REDD,

Plaintiff,

          v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

Defendant.

Civil No. 19-9371 (RMB)

**OPINION**

APPEARANCES:

BOSS & FRANKEL, P.A.
By: Kathryne H. Pope, Esq.
725 Kenilworth Avenue, Suite 2
Cherry Hill, New Jersey 08002
        Counsel for Joanne Redd

SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL
By: Anne von Scheven, Special Assistant United States Attorney
Office of the General Counsel
P.O. Box 41777
Philadelphia, Pennsylvania 19101
        Counsel for Commissioner of the
        Social Security Administration

**RENEE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon an appeal by
Plaintiff Joanne Redd (the "Plaintiff") of the final
determination of the Commissioner of Social Security (the
"Commissioner") denying Plaintiff's application for social
security disability benefits.  For the reasons set forth herein,
the Court will **VACATE** the decision of the Administrative Law
Judge (the "ALJ") and **REMAND** for proceedings consistent with
this Opinion.

I.  <u>**PROCEDURAL HISTORY**</u>

On February 11, 2015, Plaintiff protectively filed a Title
II application for disability insurance benefits, alleging
disability, beginning February 11, 2015, based on a variety of
health conditions, including coronary artery disease, diabetes,
hypertension, and hearing loss. [Record of Proceedings ("R.P."),
p. 76-83]. Plaintiff's claim was initially denied on June 30,
2015, and again denied upon reconsideration on August 28, 2015.
[R.P., p. 12]. At a formal hearing on December 19, 2017,
Administrative Law Judge Karen Shelton heard testimony from
Plaintiff and her attorney. [R.P., p. 25-67].

Following the formal hearing, the ALJ issued a decision on
April 2, 2018, which denied Plaintiff's claim based on the ALJ's
determination that Plaintiff was "capable of performing past

2

relevant work as an administrative clerk." [R.P., p. 19]. The
Appeals Council denied Plaintiff's request for review on
February 1, 2019, rendering the ALJ's decision as final. [R.P.,
p. 1-5].  Plaintiff now seeks this Court's review.

## II.  <u>STANDARD OF REVIEW</u>

When reviewing a final decision of an ALJ regarding
disability benefits, a court must uphold the ALJ's factual
decisions if they are supported by "substantial evidence." <u>Hess
v. Comm'r Soc. Sec.</u>, 931 F.3d 198, n. 10 (3d Cir. 2019); 42
U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means
"'more than a mere scintilla. It means such relevant evidence as
a reasonable mind might accept as adequate to support a
conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)
(quoting <u>Cons. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938));
<u>Albert Einstein Med. Ctr. v. Sebelius</u>, 566 F.3d 368, 372 (3d
Cir. 2009).

In addition to the "substantial evidence" inquiry, the
court must also determine whether the ALJ applied the correct
legal standards. <u>See Friedberg v. Schweiker</u>, 721 F.2d 445, 447
(3d Cir. 1983); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir.
2000). The Court's review of legal issues is plenary. <u>Hess</u>, 931
F.3d at n. 10 (citing <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d
356, 359 (3d Cir. 2011)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant bears the burden of proof at steps one through four, and the Commissioner of Social Security at step five. Hess, 931 F.3d at 201 (citing Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010). Recently in Hess, 931 F.3d at 201-02, the Third Circuit described the ALJ's role in the Commissioner's inquiry at each step of this analysis:

4

At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience [.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podeworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

III. <u>**FACTUAL BACKGROUND**</u>

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.  Plaintiff allegedly suffers from several conditions, including hearing loss; tinnitus; coronary artery disease; diabetes; degenerative joint disease; and depression. [R.P., p. 280-87, p. 55-56]. Plaintiff, who was 61 years and 9 months old on the Alleged Onset Date of February 11, 2015 (the "AOD"), has a high school degree and completed two years of college in 1973.

### A. *Plaintiff's Medical History*

During the fifteen years leading up to her claim for disability benefits, Plaintiff held a variety of jobs, but most of her employment experience was as a telephone customer service representative. [see R.P., p. 213-219].  From 2001 to 2002, Plaintiff worked as a client services representative, handling retirement and pension benefit questions, at Milliman.  In 2005, Plaintiff worked as a telephone marketing/sales representative for a credit card company, MBNA (for whom she had previously worked from 1990 to 1999).  From 2007 to 2008, Plaintiff worked as a customer service representative for a company called Enterprises Services, LLC (EDS).  Plaintiff also served as a customer account representative for Comcast Cable Communications from 2009 to 2015.  At the administrative hearing, Plaintiff testified that from September 2004 to January 2005, she obtained

various short-term administrative positions through a temp
agency, including jobs at Seton Hall University and at a charter
school.

According to Plaintiff, in 2015, she was terminated from
her job at Comcast after her heart and hearing issues became
more severe.  Plaintiff testified that she has been deaf in her
left ear since childhood, but that her job became more difficult
after she began needing a hearing aid in her right ear in 2013.
Plaintiff's job at Comcast required her to wear a headset to
talk to customers on the phone. [R.P., p. 42-48].  Plaintiff
stated that the hearing aid would cause static and interference
while she was on the phone with customers. [Id.].  Although
technicians at the company tried to fix the problem by pairing
her hearing aid with the headset, those attempts were
unsuccessful. [Id.].  Meanwhile, Plaintiff, who had suffered a
heart attack years earlier, also began experiencing chest pain
due to the stress of dealing with customers who would scream and
yell at her. [Id.]. These factors led Plaintiff to take Family
Medical Leave Act ("FMLA") leave from Comcast.  However, she was
terminated from her position before she could attempt to return
to work.

Towards the end of 2015, Plaintiff obtained a part-time
sales associate job at a Macy's department store. [R.P., p. 51].

7

Plaintiff, however, could not stand for extended periods of
time, as required by that position, and left that job after only
three months.  Plaintiff explained that standing for more than
an hour at a time would cause severe pain in her legs.  After
leaving her job at Macy's, Plaintiff worked part-time as a home
health care helper from November 2016 until August 2017. [R.P.,
p. 31, 37].  The ALJ did not inquire about the reason Plaintiff
left that position.

Plaintiff's medical records confirm a long history of
hearing loss and heart issues.  Plaintiff testified that she has
been deaf in her left ear since childhood and that her hearing
in her left ear gradually worsened over the years.  In a June
26, 2015 evaluation, Dr. Max Ronis of Ear Nose & Throat
Professional Associates noted that Plaintiff "has an obvious
bilateral hearing loss." [R.P., p. 400-401].  Plaintiff suffered
a heart attack in 2001 and a stent inserted in 2002, however,
her heart health appeared relatively stable in the years
afterwards.

On February 15, 2016, Dr. Nicholas DeMaria, Plaintiff's
treating physician since 2009, prepared a medical source
statement regarding the impact of Plaintiff's physical
impairments on her ability to work a regular 40-hour workweek.
[R.P., p. 403-406].  In that report, Dr. DeMaria noted that

8

Plaintiff suffers from coronary artery disease, insulin dependent diabetes, hypertension, hearing loss, diabetic retinopathy, myalgia in her legs, and tinnitus. [Id.].  Dr. DeMaria opined that Plaintiff's physical ailments contributed to depression and would interfere with her attention and concentration to perform simple work tasks.  Dr. DeMaria also indicated that Plaintiff's conditions would cause her to be off task for 25% or more of the workday and that she would be able to sit for less than 6 hours in an eight-hour workday, stand/walk for less than two hours, and lift/carry less than ten pounds occasionally. [Id.]. State agency physicians reviewed Plaintiff's medical records and determined that Plaintiff had moderate exertional limitations and hearing problems that precluded her from working in high ambient noise environments, but that she could hear in the workplace and hear warnings/alarms. [R.P., p. 68-80].

### B. The ALJ's Decision

Following the administrative hearing, the ALJ concluded that Plaintiff was not disabled under the meaning of the Act. At Step One of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 11, 2015. [R.P. at 14].  At Step Two, the ALJ determined that Plaintiff's "diabetes

mellitus, hyperlipidemia, hypertension, acute myocardial infarction, bilateral hearing loss, and obesity" were severe impairments. [Id.].  The ALJ also considered Plaintiff's "left medial and later epicondylitis and left elbow degenerative joint disease and diabetic retinopathy," but found that the medical evidence suggested that those impairments would have "no more than a minimal effect on an individual's ability to perform basic work activities." [Id.].

At Step Three the ALJ determined that Plaintiff did not have an impairment that meets or was medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R.P, p. 15].  In reaching this determination, the ALJ considered listings 4.02 (chronic heart failure), 4.04 (ischemic heart disease), and 2.10 (hearing loss not treated with cochlear implantation), as well as (recently rescinded) SSR 02-1p (evaluation of obesity.

At Step Four, the ALJ determined Plaintiff's RFC as follows:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except lift and carry no more than 10 pounds, stand and walk no more than 2 hours in an 8-hour workday, and sit for no more than 6 hours in an 8-hour workday. No climbing ladders, ropes, or

scaffold, and only occasional ramps and stairs, balancing, stooping, kneeling, crouching and crawling. Occasional exposure to noise at a greater than moderate level. No job in a high ambient noise environment. No exposure to unprotected heights or hazardous machinery. No jobs that require excellent hearing for performance, such as audio tuning. Lastly, no jobs requiring a head set for communication"

[R.P. at 16]. In making this decision, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Id.]. The ALJ gave "little weight" to Dr. DeMaria's suggested physical limitations, finding these limitations inconsistent with Plaintiff's reported activities of daily living, which included "engaging in personal care, shopping in stores, or travelling outside on a daily basis" and "fair ability following spoken instructions." [Id. at p. 17].

The ALJ acknowledged that Plaintiff's hearing loss and tinnitus prevented her from performing her past relevant work as a telephone consumer support representative, but concluded that Plaintiff's overall activities of daily living demonstrated that she was "capable of performing past relevant work as an

administrative clerk." [R.P. at 19].  The ALJ emphasized that Plaintiff "worked as a temporary office employee from 2006 to 2008, performing activities such as filing, faxing, making coffee, and providing general office assistance." [Id.]. Thus, the ALJ held that Plaintiff's temporary administrative work "meets the standards for past relevant work" and "that she did the work long enough and for income to satisfy the requirements that past relevant work be at substantial gainful activity level." [Id.].  Based on the ALJ's determination that Plaintiff's RFC would allow her to "perform the administrative clerk position as actually performed" in her previous clerical roles, Plaintiff was not considered disabled under the Social Security Act. [Id.].

## IV.  **DISCUSSION**

On appeal, Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because the ALJ erred in (1) her evaluation of Plaintiff's past relevant work, and (2) according "little weight" to the opinion of treating physician Dr. DeMaria.  Upon review, this Court agrees with Plaintiff that the ALJ's decision was based upon seemingly incorrect statements

about the duration and nature of Plaintiff's relevant work as an administrative clerk.

"Under the applicable regulations, past relevant work will satisfy the definition of substantial gainful activity if it yielded earnings of a certain amount and lasted long enough for the claimant to learn to do the job." Drejka v. Comm'r of Soc. Sec., 61 F. App'x 778, 783 (3d Cir. 2003)(citing 20 C.F.R. §§ 416.965 and 416.972).  The length of time for an individual to have learned how to perform a specific job "depends on the nature and complexity of the work." Id.  Under that framework, the U.S. Court of Appeals for the Third Circuit explained that some short-term jobs, even those held for less than three months, could be considered past relevant work if the job is unskilled or relatively easy to learn.

In this case, it appears that the ALJ's determination that Plaintiff's temporary clerical work qualified as past relevant work was based upon the ALJ's factually incorrect statement that Plaintiff "worked as a temporary office employee from 2006 to 2008."  On the contrary, the documents that the ALJ cites in support of this statement only list one three-month period of clerical work, from September 2004 to January 2005. [R.P., p. 213-220].  These documents also indicate that Plaintiff was working for EDS as a customer service representative from June 2007 to August 2008. [Id.].  Although Plaintiff's statements at

13

the administrative hearing suggest that she may have worked in multiple temporary administrative clerk positions, the ALJ failed to develop the record and clarify the dates and duration of those positions.

Although the ALJ could have determined that Plaintiff's three months in an administrative clerk role was long enough to have learned the position, the ALJ failed to establish those facts. Without further analysis that accurately accounts for Plaintiff's actual dates of employment and whether sufficient wages were earned during that period, this Court cannot determine whether the ALJ's findings were supported by substantial evidence. The Court also notes that ten years passed between the end of Plaintiff's administrative clerk position (in January 2005) and the alleged onset date (February 2015). With that in mind, any analysis should assess whether Plaintiff's work experience was substantial enough for her to retain the ability to perform that position a decade later.

This Court is not prepared to conclude that the ALJ erred in her assessment of Dr. DeMaria's medical evaluation. On remand, however, the ALJ should develop a clearer record with a vocational expert and assess whether Plaintiff's declining health would have allowed her to retain and perform the same

tasks ten years later, especially given technological changes and expectations in the workplace.

**V.    CONCLUSION**

   For the aforementioned reasons, the Court cannot determine whether the ALJ's decision is supported by substantial evidence. Although there may be evidence and analysis to support the ALJ's initial conclusion, the ALJ must address the deficiencies outlined herein on remand.  As such, the ALJ's decision will be **VACATED** and **REMANDED** for further proceedings consistent with this Opinion.  An appropriate Order shall issue on this date.

DATED: April 30, 2020

                                 s/Renée Marie Bumb
                                 RENÉE MARIE BUMB
                                 UNITED STATES DISTRICT JUDGE